YAZOO & MISSISSIPPI VALLEY RAILROAD CO. *v.* THOMPSON

[61 South. 455.]

CARRIERS.    *Passengers. Negligence in starting.*

> Where a railroad train stopped at a station sufficiently long to allow a passenger to safely get aboard, but he delayed doing so until the train had started, yet if after he had safely boarded the train, he was injured by the negligent movement of the train, he was entitled to recover for the injuries sustained.

APPEAL from the circuit court of Madison county.
HON. W. A. HENRY. Judge

Suit by Rowland Thompson against the Yazoo & Mississippi Valley Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Mayes & Mayes,* for appellant.

This is one of those peculiar cases where it is not only necessary to let the court see what the testimony in the record is, showing how this accident happened, but is it equally necessary that the court's attention be called to what the proof in this record fails to show, as well as to what it does show.

At this stage of this case, we think it would not be improper to call the court's attention to the fact that in this state our decisions are that the carrier is only under the duty to its passengers to stop its trains for a reasonable time in order to allow passengers to get on and off the trains.

In the case of *Georgia Pacific R. R. Co.* v. *West,* 66 Miss. 310, this court held that "The employees in charge of a train do not owe a duty to passengers on board to stop longer than is sufficient for them safely and conveniently to get off; but even after the usual stop, it is negligence for them to start the train if they know, or have

reason to believe, that a passenger is in the act of alighting or that the passenger, intending to alight, from age or infirmity requires a longer time to alight.''

Right here we want to emphasize the fact that there is not a syllable of proof in this record which goes to show that the employees of this train knew that Thompson was anywhere near the train when he says he got hurt.

We desire to say right here that, taking this testimony in connection with that of Mrs. Harris, to which we will hereafter direct the court's attention, and the flagman, and the conductor, and all other employees of the railroad, and all other parties who were standing near, this train had stopped at the station long enough to enable any intending passenger to get on board. In other words, it had stopped a reasonable time, and if none of the employees saw Thompson when he was trying to get on the train, there cannot be any liability because the train only owed the duty to stop for a reasonable time, and this it had done. See also *Y. & M. V. R. R. Co.* v. *Beattie*, 49 So. 609.

We understand this to be the universal rule upon this subject. We say, if the court please, that the overwhelming facts show that this accident occurred as the railroad company attempted to show by its proof that it did.

Now on these facts, we call the court's attention to the instructions. We think that instruction No. 8 given for the plaintiff was error, and we also think that instructions Nos. 5 and 6 refused for the defendant should have been given.

While it is true, as said in instruction number eight, the plaintiff was not required to board the first coach he came to, this is not a general rule of law to be applied in all cases. Whether this instruction is the correct one or not is to be determined in the light of the particular facts.

We say, under the facts of this case, that the giving of this instruction was wrong. This instruction cuts out the

right which the railroad company has to show that it did stop a reasonable length of time, and that Mr. Thompson could have gotten on in perfect safety if he had used due diligence; that is to say, in the face of the record which shows that none of the employees of the railroad company were aware of the fact that he was intending to board the train.

It is true he was not required to board the first coach he came to, but when he saw that the train was crowded and knew that none of the employees of the train knew of his intention, and had ample time and opportunity to board the train in perfect safety at some other point than the one in which he attempted to get on, then it is not true that he had a right to board any coach that he wanted to embark upon, but that he must board that coach which afforded him protection, and particularly when he knows the train has stood there a sufficient length of time to enable him and other passengers to get on and off.

We made this fight on the theory that we had stopped for a reasonable length of time. This instruction cuts us off from showing that by way of defense to the suit which Mr. Thompson has instituted against us. It was his duty, under the facts of this case, after the train had stood for so long a time and when the employees of the company were ignorant of his purpose to board the train, to get on where he could do so in perfect safety, and this he did not do.

And, now, equal error was it, in our judgment, for the court to refuse instruction number six. This instruction attempted to tell the jury that the final test of liability was, not what plaintiff did, or what he could and should have done, under the facts and circumstances of this case, and to further tell the jury that if they believe from the evidence that Thompson could and should have boarded the train while it was standing at Flora, and while so doing he would not have been injured, then they should find for the defendant.

104 Miss. 23

We say this instruction should have been given. It was a perfectly good instruction as applied to the facts of this case, and constitutes our defense.

Certainly it is the law that if Thompson could and should have boarded the train while it was standing at Flora, and by so doing he would not have been injured, and he failed to do this, or neglected to do it, and waited until after the train was moving and this was our defense, and then undertook to board the train, surely the rail-road company was not liable.

We say, if the court please, that when instruction number six was refused, that the refusal of this instruction destroyed our defense *in toto.* We had nothing left to stand on; if it is not true that Thompson ought to have boarded the train when he could and should, then there was no question, so far as we were concerned, to be submitted to the jury, and this instruction was tantamount to giving a peremptory instruction in favor of plaintiff.

We say, therefore, that going into an analysis of all the instructions, that on the facts of this case, which leave it in grave doubt as to whether or not the appellee should have recovered at all, that the errors which we have pointed out to the court, if we are correct in our view of these instructions, must of necessity cause a reversal.

But coming to instruction number five, we think the error committed by the court in refusing this instruction is incurable. By the fifth instruction we undertook to have the court tell the jury "that if they believe from the evidence that plaintiff was injured by his own negligence," that the railroad company was not liable, and the court refused this instruction. This was our whole case and is bound to be the law, else if a person jumped in front of a train to commit suicide, the company would be liable. There are no other instructions which cure this.

Instructions numbered twenty-two and twenty-three given for defendants say that the company is not liable

if Thompson was wilfully or grossly negligent, but it is also true that if the injury was caused solely by the negligence of Thompson, there is no liability on the part of the company and the court should have so instructed.

Instruction number sixteen deals with the negligence of Thompson, if the jury believed he attempted to board a moving train. It has no relation to the principle of law attempted to be announced by instruction five refused for defendant. The court denied us proper instructions on the lines indicated by instruction number five.

*Easterling, Potter & Greaves,* for appellee.

This court has laid down the doctrine repeatedly that it will not reverse a case for slight errors in law where substantial justice has been done but that it would only reverse in those cases where it is shown that substantial injustice has been done to the complaining party. We desire to call the court's attention to the fact that the theory upon which the appellant tried this case in the court below was fully, fairly and concisely presented to the jury in proper instructions; in fact, the instructions given for the railroad company are not, as a matter of fact, correct law, as they announce a rule that is not the law now, to wit, that if plaintiff was injured by his negligence or if his negligence contributed thereto, then there should be a verdict for the defendant. This is more liberal than the law as recently announced by this court in the case of *Y. & M. V. R. R. Co.* v. *Carroll,* 60 So. 1013. Counsel complain of the failure of the court to grant instruction number eight for the defendant. This instruction is not the law and was promptly refused by the court, because it was not denied by the appellant that plaintiff was injured by the running of its train, and that being true, then the burden was not upon the plaintiff to prove how the accident happened to the entire satisfaction of the jury, but the burden was upon the defendant company to exculpate itself from negligence and show exactly how

it happened and so the refusal to grant instruction number eight was not error.

Counsel complain of the refusal of the court to grant instruction numbers four and six. We respectfully submit that instruction number five is but an abstract statement of the same rule of law that is forcibly and concretely stated in instruction sixteen, which was granted by the court for the appellant. Instruction number five merely tells the jury that if they believed from the evidence that the plaintiff was injured by his own negligence, then the defendant was entitled to a verdict. As a matter of fact this is not the law, as this accident happened since the Laws of 1910 went into effect and the new rule on negligence and contributory negligence adopted by our state. Instruction number sixteen announced to the jury the same doctrine in a way more forcibly because concrete and thereby gave to appellant full advantages of everything asked for in number five. Instruction number sixteen granted appellant is as follows: "The court instructs the jury that if they believe from the evidence that the train of defendant waited at Flora on the night in question a reasonable length of time for the embarkation and disembarkation of passengers and that plaintiff had a reasonable opportunity to embark on said train while it was standing at Flora and that he did not embark or attempt to embark during such reasonable stop but attempted to embark after the train was in motion and by reason thereof he was injured when the train was in motion and by reason thereof he was injured then he was guilty of negligence in so doing and he cannot recover in this suit." This instruction announced a rule more favorable for the appellant, we think, than the law allows. It is too favorable to the defendant.

We contend that instruction number six does not announce a correct principle of law. It states to the jury that the final test is not what the plaintiff did but what he could and should have done under the facts and circum-

stances of this case.   We respectfully submit that this is
not the law.   It is not what he should have done, but the
true rule should have said "the final test is not what the
plaintiff did but what a man of reasonable prudence un-
der like circumstances and facts would have done."   We
respectfully submit that this instruction is erroneous for
another reason, and that is, it is misleading and specula-
tive and the defendant had the benefit of the same doc-
trine announced in instruction number sixteen, number
twenty-two and twenty-three for appellant, asked in the
court below and granted.   So we respectfully submit that
inasmuch as appellant received instructions from the
court covering every phase of its defense and clearly pre-
senting its defense to the jury that that is all any litigant
can ask in any case and it cannot now be heard to com-
plain that other instructions announcing the same princi-
ple were not also given.   Appellant was given the benefit
of an instruction on every theory of its case and the doc-
trine announced was much more liberal than the law al-
lows.   For the jury was even told in instruction number
twenty-three "that even though they might believe from
the evidence that defendant negligently inflicted the in-
juries upon plaintiff that he cannot recover if they be-
lieve from the evidence that plaintiff by his own negli-
gence contributed to the injury."   This is not the law and
announces a doctrine far more favorable to the defend-
ant than the law allows. Appellee might have complained,
if the case had been decided against him, of the action
of the court in giving these too favorable instructions for
the defendant, but certainly appellant cannot be heard to
complain when he got more than the law allowed.

   A great deal has been said here as well as in the court
below because he ought to have anticipated how long the
train was going to stand and ought to have known in ad-
vance that he was going to be injured and should have
guarded against this foreseen injury by catching the first
coach he came to; that he should have been versed in all

the rules of the railroad company and be held to have had knowledge of how long the train would likely stop and that he should have anticipated that the train would jerk and snatch him off when he attempted to board it and a great many other equally as hyperthetical conditions. For instance, he was asked in his cross-examination by counsel for defendant, why he did not run around and get on some other place or run ahead of the passengers who were getting on so as to get on safely. We submit that this is hypercritical and unreasonable and that this court will not tolerate any such defense. We submit that it is a known fact and usual and customary for passengers in getting on and off trains to wait for those just preceding to get on and to get off at the place where the steps are provided and where the other passengers are getting on; that it is not required of a passenger that he run up and down the side of the train looking for a place where no other passengers are getting on to get on by himself. And yet, counsel for the railroad company in this case seems to invoke such a doctrine for this poor country boy. They insist that he should have gotten on the steps of another coach. And he is asked repeatedly why he did not do this. He states very positively and plainly that he wanted to get in the ladies coach; that was the place where the steps were and that he got up from the sitting room with the crowd who went to catch the train and just as soon as Mrs. Harris and her four children were loaded on the train and Mr. Otis came down the steps and just as soon as he could, after the passengers had gotten on, he attempted to board said train and that while he was in the act of going up the steps the train was started and gave a lurch which threw him off. It will be remembered that this lady with grips and her four children were helped into the train by Mr. Otis and the flagman, the children being lifted upon the platform. Anyone reading the record can see from the testimony of the flagman taken in connection with the testimony of Caldwell Gatling, a wit-

ness for the plaintiff, that the flagman as he stated, carried the grips in and rushed out giving the signal to start.  See testimony of Ernest on pages 84, 85 and 86. On page 86 the question was asked: "Didn't you state in your former testimony that when you run in and put the grips down, you ran out grabbed your stool and said, 'All right here,' and then the train pulled out?"  "Yes, sir."  Then again the same flagman states: "I unloaded my passengers and the lady with four children got on the train and I assisted her in getting on the train and got her grip and put it just inside the door and then I went back out, and the conductor—I said 'Right here' to the conductor, giving him the signal and he gave the signal for the train to proceed."

The appellee testified that the stool was there when he went to get on and that the flagman was standing within two feet of him and that after he started up the steps the flagman picked up the stool and gave the signal to start. There is no doubt in the world but that the accident was caused by reason of the flagman giving the signal too quick for the train to start.  His own testimony when carefully considered bears this out.  The appellee testified that he got on just as soon as he had opportunity and 'hat before he could step from the first step to the second step the train started with a lurch which threw him to the ground.  Manifestly the railroad company should have stopped its train long enough to have allowed appellee opportunity to have boarded its train in safety. There is no dispute about the law on this point; counsel cite the law and find no quarrel with it.

Counsel for appellant complain of instruction number eight given for the plaintiff which tells the jury that plaintiff was not required to board the first coach he came to but that he had the right to board any one he wanted to, and the fact, if such be the fact, that he was attempting to board the ladies' coach, though there were other coaches more convenient, should not be considered

against him. We say that this is the law; that this court knows that every passenger has the right to board either the smoking car or the ladies' car, and that there is no rule requiring him to board the first car he comes to. This instruction has to be considered with the evidence in the case. It was not disputed that appellee was attempting to board the ladies' car where the steps were and where the other passengers were getting on. His injury was caused not by reason of the fact that he attempted to board one car rather than the other, but the injury complained of according to appellee's version was caused by the sudden starting of the car before plaintiff had time to safely embark. So we say it certainly was not error in this case if such be the fact and it was not disputed that appellee was attempting to board the ladies' coach should not be considered against him. If he had the right to board this particular coach, how can it be said or contended that it was error for the court to tell the jury that the fact that he did board this coach rather than another should not be considered against him? We certainly fail to see where the giving of this instruction was error or how it prejudiced the appellant in its defense.

Taking the entire record as a whole it may fairly be summed up as follows: The injury complained of was caused by the running of defendant's train. This fact is not disputed, but stands admitted? On authority of the Brooks case and subsequent decisions of this court, without the testimony of Creed Rowland a peremptory instruction should have been given for appellee, since the railroad company cannot exculpate itself from liability on mere theory or conjecture, but the burden is cast upon the defendant of showing how the accident happened and that it was not negligent. The above is true by reason of section 1985 of the Code of 1906 and decisions of this court thereunder. But if we take the testimony of appellee and Caldwell Gatlin, positive evidence, a clear

case of negligence and liability is made out against appellant. If the testimony of Creed Rowland had not been introduced by appellant, then a peremptory instruction on quite another theory should have been granted appellee. For no other witness attempts to say that the accident occurred other than as testified to by appellee and corroberated by Caldwell Gatlin. So appellant's whole case depends upon the testimony of this one witness, Creed Rowland, without his testimony, such as it is, a peremptory instruction should have been awarded appellee. This being true, if this witness' testimony was the sole reason for allowing this case to go to the jury at all on the question of liability and his evidence is disbelieved and rejected by the jury, in what way can it be said that appellant has been prejudiced?

We submit that on the facts of this case, a verdict of the jury for appellant would not have been permitted to stand. For it would necessarily have been bottomed on the evidence of witness Rowland, whose evidence stands boldly forth impeached by every other witness, by every physical fact in the case and intrinsically weak and self-contradictory.

We think, taking this case as a whole, and considering the instruction given on both sides together and all the evidence of the case, that manifestly the right result was reached and that no prejudice was shown by the jury and that their finding on the facts is conclusive of appellee's right to recover and the amount awarded him, if anything, is too small for the amount of injuries sustained by him.

COOK, J., delivered the opinion of the court.

Appellee sued appellant, a railroad company, for injury inflicted upon him by the negligent running of its train, upon which appellee was a passenger. The appellant complains that the court erroneously refused to instruct the jury as requested by it. The case may be stated in this way:

Appellee had purchased a ticket entitling him to safe passage from Flora to Jackson, and he claims that he boarded the train at Flora as soon as he could do so, being somewhat delayed by other passengers, who were entering the cars just preceding him; that just as he had gotten onto the first step and was in the act of stepping on the second step, appellant's employees suddenly and violently put the train in motion and "snatched" him off the steps and under the wheels of the moving train, which cut off several of his fingers and mutilated others. The defense was that they stopped the train sufficiently long for plaintiff to safely board the train, but he delayed doing so, and in attempting to board the train while moving he was injured by his own negligent act; that the train was carefully handled, without jerks or sudden starts.

The issue was clean-cut and the jury decided in plaintiff's favor. If the railroad's witnesses were believed, the verdict should have been for the defendant; but, if the jury believed plaintiff's witnesses, their verdict was right. A great deal was proven about the time elapsing between the arrival and departure of the train, and much stress is laid upon that feature of the case in the argument to this court. It may be admitted that the train was not prematurely started, but nevertheless plaintiff would be entitled to a verdict if the jury believed his testimony to the effect that the injury was caused by the negligent movement of the train after he had succeeded in safely boarding the same.

We have examined the refused instructions, as well as the instructions given for the defendant, and, without deciding that the instructions offered and refused correctly stated the law applicable to the facts, we do say that the instructions given cured any possible error arising from the court's refusal to give the instructions marked "Refused."

*Affirmed.*